Our last day of arguments this week. We're happy to have you here with us. I think you're all familiar with our lighting system, but just a quick refresher on that. When the yellow light goes on, you have two minutes left. When the red light goes on, your time is up. We ask that you please respect the lighting system and that you stop speaking when the red light goes on. The only exception is that if one of us has asked you a question, we do want to hear your answer to the question, so please go ahead and answer, even if it's after the red light. And with that, we'll begin today with Mobile Baykeeper v. Alabama Power Company. We'll hear first from Mr. Torrey. Nick Torrey Good morning. Thank you, Your Honor. May it please the Court, I'm Nick Torrey, representing the appellant Mobile Baykeeper. I'd like to reserve four minutes for rebuttal. We are here on de novo review of dismissal on standing and ripeness that departed from the well-settled case law on those issues. The district court should have credited the allegations in the complaint as true, should have drawn inferences in favor of Baykeeper, should have assumed that the general allegations encompass specific facts necessary to resolve the motion, and should have assumed that on the merits of the violations that are happening now that we've set out, the court should have assumed that we would prevail on those in analyzing the issues. That did not happen. And I'll talk about standing and ripeness. I want to just briefly touch on what we set out in the complaint. Alabama Power is closing its Plantberry coal ash lagoon by capping it with a synthetic cover, leaving ash underneath sitting in water where it is leaching arsenic and other toxic metals and pollutants into the surrounding waters. That closure is authorized by a state solid waste permit. It's actually required by the binding terms of that state solid waste permit, but it violates three closure standards of the federal coal ash regulations. Those rules were created because coal ash is waste that contains toxic metals and other pollutants. It's stored in a wet slurry and unlined leaking impoundments. And the rules require coal ash lagoons like Plantberry to close and to do so by selecting a closure method that will either comply with the performance standards for cap in place, covering it with a synthetic cover, and to do so and meet those standards they have to separate the ash from water, or they can remove the ash. By violating the cap in place standards and closing the ash in water, Alabama Power is causing pollution that's harming our members. And so we're asking in this case to prohibit Alabama Power from closing with the ash in water. Instead, to comply with the federal closure standards to separate the ash from water and stop the source of the ongoing pollution. So, on standing, what's the, just to jump ahead a little bit, so what's the difference as far as amount of pollution between the two methods of closure? Like what's the delta that you're trying to prohibit by having them use the other method of closure instead of the cap method? Certainly, well these standards that we're enforcing require disconnecting the source from the surrounding waters. So, zero. And that's not the, yeah, okay. There's got to be some difference between the method they're using and, so they're going to use a method where they're going to cap it, right? Correct, so what we're trying to achieve is zero pollution. Oh, I see. That's what these standards. You're saying that their method will allow some amount of continuing pollution. Yes. Your proposed method will say no allowed continuing pollution. Correct, and that's because their plan, by design, it leaves ash sitting in water. They actually admitted in correspondence with EPA that it would leave approximately a million tons of ash sitting in water. EPA estimated that amount at five times greater, five million tons of ash. But regardless, a massive amount of source material continuing to leach out these pollutants, and that's the difference. Okay, so what we're trying to achieve is the lawful closure in compliance with these standards, which would remove that source, stop the ongoing pollution that's harming Baykeepers members. Am I correct in understanding from the briefs that there's a disagreement between the parties about whether any contact between coal ash and water is permitted? Yes, Your Honor, that is correct. They argued in much of the briefing below was devoted to merits arguments about what these rules allow or don't allow. And we feel very confident that we're right about what the rules require, but regardless, that's not something that is relevant to this motion to dismiss that we're on today. So they can renew, they've made all those arguments. The district court did not grant those arguments. They can renew those on summary judgment, you know, when you send it back. But for right now, the violations that we've alleged in the complaint are the ones that we evaluate against. Can you talk to me about ripeness? This is, I guess, skipping over the injury question, which for my part I think is less hard. What can you tell me about the current status of negotiations between EPA and your opponents? Essentially, nothing has happened as to the issues in this case. So EPA is authorized by Congress in the WIN Act, which codified these coal ash programs, to investigate potential violations. And they sent Alabama Power a letter identifying potential violations, including these closure issues. And they've had some discussions. They reached a settlement agreement on other issues, not part of this case, but they did not reach any agreement on the closure issues that are this case. The one point I want to really emphasize is Congress, when it created that investigative power for EPA in the WIN Act, at the same time preserved citizen enforcement of the rules as, you know, a primary mechanism authorized under RCRA for enforcing these things. And they said very clearly there's only one thing that EPA can do that will block citizen enforcement, and that is to go to court and file an enforcement action before we do. And then we can't go forward. That did not happen here. What's the statutory site for that? Remind me. Absolutely. So that is 42 U.S.C. 6972 B.1.B. And what happened in this case is we filed the case. We were going forward. EPA, you know, sent this letter and identified, you know, potential problems. But those discussions haven't gone anywhere that we're aware of, and they couldn't go anywhere that would alter our ability to enforce the law in this case. And you're saying that right now your client is being injured because whatever Alabama Power is doing or not doing with respect to the closure is today causing more pollutants to leach into the water than it would cause if they closed it correctly. Is that your contention? Absolutely. And that's the Walters v. Fast AC case that looked at this traceability issue and said, you know, would the plaintiff be issued in precisely the same way if the challenged conduct were not occurring? And here, if they were not violating those standards and closing with their ash and water, but instead were complying with those standards and separating their ash from water, they would be reducing the contact of the ash with the water. They'd be closing the source of the pollution and achieving that zero pollution state that the standards require. So from your perspective, if EPA demands new action later, that's simply icing on the cake to what you theoretically could achieve in this lawsuit by changing their processes, you know, upon final judgment of a district court or whatever. Well, we are the only ones actually enforcing the law. We're the ones who have filed the enforcement action per the scheme that Congress set out. Right, I'm just saying, they're saying we're negotiating with EPA, who knows what's going to happen, maybe things will change, but it's too unsettled right now to have any real relief. I'm trying to understand, you're saying, no, that might be fine, but today what we're seeking would help us regardless of what happens with EPA. Is that what I'm understanding? Happens or doesn't happen with EPA. Yeah, so there are near-term benefits to lawful closure. They have to start doing work that would immediately start relieving those pollution harms. So that's an important point. In addition, I would say that both these doctrines, you know, standing and rightness, it's not based on sort of speculation about what might happen in the future. We have the, we're going off of the existing facts now. We've set out the violations that are occurring now. And any defendant, you know, in theory could say, well, you know, we might change our minds, we might come into compliance, or the agency might settle with us, and we might, something might change in the future. But if that could defeat, you know, the law enforcement now, that would be contrary to everything that I understand about these doctrines. Would you address, would you address the, there's kind of two parts to the district court's view that this, any sort of relief that you get will not take effect until too far in the future to address it now. And so you argue, one, that's just not like a legal principle that matters for the purposes of standing or rightness. And then you have a second argument that that was based on a fact determination that was just wrong. And I just wanted to get you to address those issues before you sit down. Certainly. So the district court said, or assumed, that there would be no benefit from the lawful closure method that we're seeking, basically until that was complete. And that's not how it works. And we've actually submitted an expert declaration explaining that's not how it works. But the main thing is that's a factual assumption about what happens with the pollution, what happens with the remedy that is just not appropriate on the motion to dismiss. Let's just assume the district court was right about that. Does it matter? I mean, I guess that's kind of like the legal question that I have is that, is that something that actually should factor into the rightness analysis at all? The fact that you might, you might not, or I guess it's redressability. You might not redress your injury tomorrow. It might be like five years in the future before your injury is redressed. Right. I would say no as well. In that counterfactual where it didn't make a difference, you know, in the short term, it would still be relief. And I think, you know, what Justice Kavanaugh wrote in the Diamond Alternative Energy case, a lot of the standing cases make clear, you know, you can look out into the future and if there is at least the possibility of even partial relief, that's enough for redressability. I'll just say one thing on the question you were asking, Judge Grant, too. That is that if there were a future change, they could always come back and move to dismiss as moot. I mean, they do have a recourse in that scenario, but they would have to meet their burden to demonstrate mootness at that point. Nothing like that has occurred here. In fact, they argued vigorously that they should get to do exactly what they're doing now. And before you sit down, can you confirm for me whether it's accurate to say that Alabama Power reached settlement of all other concerns 12 months ago with EPA and Alabama Power is given no sign that any negotiations are continuing about the closure plan? Well, the settlement that they reached was a very partial settlement of other issues not related to the closure, which is really the central question. That's my point. Yes. So, that's correct. Okay. Thank you. Okay. All right, Mr. Torrey, you've reserved four minutes. We'll hear from Mr. Hayden. If it pleases the Court, Ed Hayden for Alabama Power. Your Honor, this court can affirm for any reason, including redressability and rightness. Here, there's a mismatch between the injury they allege, which is not stopping ongoing pollution, and the judicial relief they request, which is file a plan. If Judge DuBose ordered us to file a plan today, we go to ADEM, which is I'm sorry to interrupt, but isn't it more than file a plan? Isn't it file a plan that complies with the law? Right. The plan has to be compliant. Okay. So, it's really an assumption that you would be then in compliance with the law when you currently are not? No, Your Honor. There's a between filing a plan and implementing that plan. Specifically, ADEM Regulation 335-13-5-.025a says that if we want to modify our permit, we have to file an application. That'd be the plan with ADEM. And the next sentence of that regulation says that before we can actually implement that, it says we have to get approval from the department, quote, prior to implementation of the proposed change. And so, they're two different things. We can file a plan all day long, but the problem is ADEM and EPA, we file it, that just starts us down the road of contingencies. Are we going to have another permit program at ADEM? Is EPA going to approve it? Is EPA going to have their own permit program? Is EPA going to say under penalty provision that we have to close in place, we have to have more engineering controls, we have to excavate? You're saying, because at this stage, we assume that their factual allegations are true. So, what you're saying is Alabama Powers Plan is unlawful, but requiring them, requiring your client to file a lawful plan will not redress their injury because there are a lot of bureaucratic hurdles between filing that plan and actually getting something done. Exactly right. That is surprising to me as a contention. Well, I would say this. I think the best authority for that would be what my opponent cited in their post-judgment motion, which is document 11, page 15. And they say that under Lujan, pages 570 and 571, Justice Scalia wrote that since you only had two agencies that were a party to the case, and the court said, you want us to order that all these other agencies and the government have to consult with him before they do environmental projects overseas. But they're not parties to the case, so they're not bound. So, there's no redressability. I don't think there's a discretionary given to Alabama state authorities to demand that a plan that is compliant with federal law fall out of compliance with federal law, right? I mean, that's what you're saying. If their contention is the plan right now is unlawful, you need to file a lawful plan. And you're saying, okay, fine, we can file a lawful plan in Alabama, but who knows if the authorities will actually allow that lawful plan to go forward. Maybe they'll tell us it has to be unlawful. That is what I find surprising. What I'm saying, Your Honor, is that just because Judge DuBose says, this is what's lawful, and that would say, okay, that's what we say is lawful, Alabama Power and Baykeeper. It doesn't bind people who aren't parties to the case. That's not necessarily what ADA says. But we do have to assume that Alabama authorities will act within the law. And if there's some dispute about that, then it would go to a court. And that's why, unfortunately, this litigation of this sort tends to drag out forever because there are a lot of legal contingencies. But I've never understood the fact that we have to sort out what's correct under the law to mean that an injury is not redressable. Well, I think what it means is, if ADEM takes the same view as Judge DuBose, and then EPA takes the same view as Judge DuBose, because EPA has the hammer under RCRA, they can impose a penalty on us and make us do whatever they want. But I think, and you'll correct me if I'm misunderstanding your point, but I think what Judge Grant is trying to get at is that that goes to the merits, right? Once you're saying, they're saying, you're not in compliance with federal law. And EPA is going to require certain things, what we're saying that you have to do. And federal law requires that Alabama comply with federal law. So ADEM is going to have to do the same thing. You are saying, no, they might not. They might not think that this is what federal law requires. But that's a question for the merits. Why isn't that a question for the merits? The reason it's not a question for the merits is the same reason it wasn't in Lujan with the other agencies. They weren't bound by, just because the Supreme Court of the United States said that you had to consult without a consulting obligation with the Departments of Interior and the Departments of Commerce. That didn't bind the other agencies, according to Justice Scalia. Well, right, but that's a different statute, though. I think whoever is right and wrong this statute about what it requires, this statute does have certain particular requirements. It's not a kind of NEPA style demand that you guys need to look at all this stuff before you figure it out, right? You have each, there are certain requirements that are disputed, but there are certain requirements about what has to be done. And there's no discretion for Alabama to think one thing and the feds to think one thing, and that just makes it impossible to ever sort it out. We need uniform compliance. However, the way you do that is you work it out with courts and with other parties. Now the EPA, for example, can have one view of what it is. If they would have made EPA a party here, they would be bound. If they made ADEM a party here, would be bound. But they didn't make them parties, so they're not bound. Can I ask you, so the standard for redressability is that when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief, that directly addresses the injury suffered. So, you know, so redressability doesn't require establishing a certainty. And so I get your point that, look, Alabama could, power could file a plan and the plan could be rejected, or they could maybe not go through with it, or something else could happen. But isn't, isn't an injunction, I mean what they ask for is an injunction against Alabama Power doing what it's currently planning to do, and that it file a plan to do something different. Right. Doesn't that meet the standard that it would significantly increase the likelihood that the different thing would happen? It would, your honor, if that plan had to be accepted. Well, then it would be a certainty though, I guess my point, right? Or let's say, but if they file it, there's no obligation whatsoever on ADM and EPA to accept that plan, reject that plan. It's just advice, because it's not binding on them, because they're not parties. Well, I mean there is, there are the legal requirements, right? And we do expect the government to comply with legal requirements. So, doesn't that take care of that problem? Well, that was the exact same argument made against Justice Scalia's holding, or his plurality opinion, in the case of Lujan. They said, well, you know, the government's, the government's part of the government, is part of the case. And so, if we hold this, then all the government's going to follow what the Supreme Court says. And the, Justice Scalia said, no, they're not required to. Well, here, no part of the government is part of the case. So, there's no collateral establishment, there's nothing that binds them. They could have made them part of the case, they didn't. But here, it kind of goes like this, your honor. They say... Becca, what would be the use of a citizen suit, which is a provision in the law, if it could never be effective? Is this a way to get people in court to kind of talk about things? Oh, I think it could be very effective, your honor. I think there are five different ways they could have actually sued, in this case, to get relief. As Justice DuBose said, they could have sued under RCRA, citizen suit provision, to say, stop imminent pollution. But they did not. They could have filed a state lawsuit to say, clean up, be a trespassing nuisance, clean up the pollution. They did not. They could have filed a suit to say, under your current permit, there's pollution coming out of the impoundment, and you're not engaged in corrective action. Remember, the regulations have two parts. One part is that you close the impoundment. The other part is, you have these wells around there, and if they pick up any pollution, you're required by law to clean it up, take corrective action. If we weren't doing that, they could have sued us under the citizen supervision. They did not. They could have challenged their permit in front of the Alabama Court of Civil Appeals and Supreme Court. They did not. Then the last one is, in the proceeding at EPA. But, and say in that last case, if EPA were not a party to that action, I think based on your earlier argument, you would say it wouldn't matter, because since EPA wasn't in that case, they couldn't receive any relief. I don't totally understand what you're saying. Okay, I'm not sure I understand your question. I guess in the last case, when I'm saying, you mean in the Rick pursuit about corrective action? Citizen suit about corrective action. Same challenge, the permit challenge. Oh, the permit challenge. Why would taking down your permit to allow you to do this activity be any different than the injunctive relief that they seek here, which is an injunction against you doing this activity? Because under the ADM regulations, we have to follow the permit, period. And so we're following it right now. If and when that permit changes, we'll follow the modified permit. But we can't change until that permit changes. And so we go file an application, neither we nor Judge DuBose controls what the district court, excuse me, what ADM does with that application. Did you make this permit-based argument in your briefs? Did you make this permit-based argument in your briefs? Yes, Your Honor, I made it in several places. Let me tell you, number one, I made it in page 51 of the brief where I quote my argument at the post-judgment hearing where I say they, Alabama Power, has to get a permit. Number two, in the document 113, our opposition to their motion, we said on page 15, all of these arguments that would stop redressability. Number three, in our brief before this court on pages 56 and 57 with respect to redressability, we argued in saying, quote, and the order could be for naught if it addresses a different closure plan than the one that actually ultimately takes effect. Because just because we file a plan doesn't mean EPA and ADM are going to accept it. Yeah, but if there's an injunction, I mean, what they're asking for is an injunction against you following the plan that ADM approved and the requirement that you file a new plan to request permission to do something different. Right. I guess going back to the standard that I read about redressability, why isn't that at least we meet that sort of likelihood standard? Well, I think the question to Duke Power is there's substantial likelihood or a likelihood that the redress fixes the injury at least partially or begins to. Okay. And so if we get that order, let's take all three of what they're asking for. One, a declaration that the current plan violates the rule. Okay. That goes to the merits for this purpose. Let's say they get that. Number two, an injunction to stop implementing your current plan. Well, that means we can't put the cover on it. So it's going to continue to rain. Coal ash sits there, continues to pollute. That doesn't stop pollution either. So now we go to C on paragraph C, page 17, document one. File a plan that's compliant with the rule. What will we do? We go to ADM. We file the plan. Okay. We file the plan and they then say, okay, we don't have an approved permit program. Do we issue a permit or not? Do we like that permit or not? Are we bound by Judge DuBose's order? No, we weren't a party. What does EPA say? EPA has their hydrologists and geologists looking at it and they're going to say, okay, here's what we think. And if you don't do what we say, we're going to have a penalty on you of a zillion dollars a day until you do what we say. Now, we're in the middle. Okay. If Judge DuBose says file a plan, we filed it. We have completed our obligation. Okay. We then have to have ADM on that regulation I cited has to say, okay, we have to have approval from the department, quote, prior to implementation of the proposed change. Okay. So as long as we're not implementing the new plan, pollution continues and we don't control what ADM says or EPA says. But standing requires only proximate causation, right? I mean, so, and but for your filing the new plan, there's no chance that you would come into compliance. No, Your Honor, that's not correct. Why is that not correct? Because EPA, under the permit, excuse me, under the penalty provision, the NOPV proceeding we're in right now, they can say, we want you to excavate, put in more engineering controls, leave it the same as you have it now. They can say all of that without any court proceeding. That's true, but court proceedings, but enforcement proceedings by EPA are not required before a private cause of action can be filed. So, statutorily. So, I'm not sure that gets you I think it gets us to redressability, Your Honor. If the plan that we file, that Judge Bode orders us to file today, we file it, EPA is not bound by it, and so will it increase I'm sorry, what you're saying effectively means that the statutory provision that says that a private cause of action can be filed and you don't have to wait for EPA enforcement is meaningless. Why is that not the case? No, because they could have filed, what if they had actually asked for an application for an implementation order? So, what if they said, instead of file a plan, they said, excavate, implement this plan. Well, had they done that, then the I mean, they can't, it still has to be approved by EPA, right? If we have a court order telling us to do something, we have to do it, and so they could and they, the same law firm in Virginia Electric case, did ask for, quote, removal as quickly as possible of all that coal ash, okay? Well, they could have asked for that here. They didn't do it. If they would have, it would have been like the South River Watershed case, where they said, we want an order to stop dumping sewage and clean it up. Or, it could have been like the Arlington Heights case. If they made a regulator a party, they could have said, hey, regulators, change your decision, and then we would have been like Arlington Heights, have to change that rezoning decision, or here, change the permitting decision. I have a feeling that in that case, you might have been saying to us, we can't just do that. We have to file a permit. What they should have said is, you need to, you need to file for a permit to do this in compliance with the law. No, no, your honor. What I'm saying is, if they had made EPA a party, like, like the plaintiff in Arlington Heights made the municipality a party, then the party can be ordered to do something. If Hayden was a party, they could be ordered to issue us a permit, and we'd have to do it. Even without a permit, if we had a court order, like in the South River Watershed case, we would have to do that. We have to be in contempt if we don't. We have to follow that order, but they didn't ask for implementation, and they didn't put the regulator as a party. They said, instead, we're going to punt, file it with the regulator, and we'll see what happens. All right. Thank you very much, Mr. Hayden, and Mr. Torrey, you've got another four minutes. This was not Judge DuBose's argument in the district court. Let me, yeah, let me, one, one point he makes that does seem to strike me as maybe correct is that an injunction against them following their current closure plan is likely to increase pollution and not decrease pollution. Have you thought about that? That's not correct, Your Honor, because they are required to close. The, the, the, the federal regulations require closure, and the question is, are you going to close in compliance with the standards or not in compliance with the standards? So a declaration and an injunction prohibiting leaving the ash and water, continuing to pollute, means they have got to come up with and implement a compliant closure plan. They're still subject to that obligation, and then we've also asked for that. We've asked for them to put forth a plan that will actually comply with these standards. So, yeah, it strikes me that the, the, the request for relief here, I know you don't do this line of work, but it's more like a redistricting case where a, a body has to redistrict, and what the plaintiff usually says is you're, don't use the plan that you have and come up with a better one, and that's, that's the remedy in that kind of case. Right. So, so I just want to be clear. I see one sentence in their brief on page 56 where they suggest this, that the state permit could somehow throw a wrench in the federal court remedy, but that's really, I think, somewhat ludicrous for a couple of reasons. Number one, let's just be clear, the, the situation we're in is that the state solid waste regulations are more lenient. They allow more than do the federal closure standards for That's why Alabama's program got rejected by EPA. And Mr. Hayden has provided no basis that ADEM would have for saying you can't do something more to clean this up in compliance with a court order saying the federal regulations need to be implemented. If they were to do such a thing, it would violate the Supremacy Clause. This is federal law being enforced. But again, it's all purely speculative. There's no reason to go down that road because, again, the assumptions that the court is supposed to make on resolving a motion to dismiss like this are that it's going to, if it's going to make it more likely that we're going to get our relief, that's enough. And this court in May decided the Marin v. Chief Financial Officer of Florida case, which dealt with an issue like this. There was a contingency raised by the state. They argued that these people might not actually succeed in the further proceeding that would need to happen to get their property back. And the court says, we don't fool around with that. We're going to assume that they prevail there because what we're addressing is, have you asked for something that would relieve your injury? And that's the case here as well. We're asking them to stop the unlawful plan and to come into compliance with the protective standards that were created in the first place to address this very problem of ongoing leaking coal ash pollution. Is there any reason, and I mean, maybe there is, why ADEM and the EPA are not parties to this? Well, quite simply, I mean, Alabama Power is the violator. And the structure of the citizen suit program is that we are enforcing these standards directly against them. The predicate for us being able to do that is that EPA has chosen not to overfile us and file an enforcement action of their own. So we're the ones doing it. And similarly, the state doesn't have a role to play here because they have a separate program. That's fine, solid waste program. It imposes its own requirements, but they're more lenient. They're not relevant to the issues in this case where we're enforcing these closures. I think your response was a good explanation for why they don't need to be a party. I guess my question is more, is there any reason they couldn't? So, for example, let's say that you won this remedy in front of Judge DuBose and she ordered them to stop their current plan and to file something asking to do a closure differently. And for some reason, ADEM said, we don't like that. Is there anything that would prevent you from adding ADEM for remedial purposes? At that point, I'm sure we could deal with it at that point. Yes, Your Honor. But I think right now, I guess you would say neither ADEM nor APA has done anything to impede the execution of a lawful plan if the district court ordered that to be filed, right? So I'm not sure what your cause of action against either of them would be today. Yeah, I think that's a great point. And then also just going back to the way that you evaluate the motion to dismiss, I mean, these are all sort of speculative possibilities about how things could play out in a way that would... You could, I mean, you know, it's conceivable at this point, you could lose and none of this has to be dealt with, right? I mean, this is a motion to dismiss on the idea that you could sort of, even if you got the relief you requested, it wouldn't help you reduce pollution. That's the question for us is if everything that you say is true and you get all the relief that you've requested, pollution would stay the same. I mean, I'm saying that's the question for us. If only if we find that pollution would stay the same, if you got everything that you requested, would we dismiss? That, I mean, I suppose that's, yeah, the way that one could think about what it would mean to dismiss this case. What I'm thinking about is, you know, these rules were created exactly to stop this problem. That's why they exist, these closure standards. And so if we're allowed to go forward and do discovery, enforce these requirements, it will result in a lawful closure that stops that pollution from happening. All right. Thank you very much. Our next case is O'Neill versus American Shaman Franchise.